Filed 3/23/23  P. v. Payton CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DEREK CHARLES PAYTON,<br><br>    Defendant and Appellant. | A165686<br><br>(Humboldt County<br>Super. Ct. No. CR1505125) |

Defendant Derek Charles Payton was charged with committing murder with malice aforethought.  Payton ultimately pleaded guilty to voluntary manslaughter.  In July 2022, Payton sought resentencing under former Penal Code[1] section 1170.95 (as amended by Stats. 2021, ch. 551, § 2) (now § 1172.6).[2]  The trial court summarily denied the petition, commenting that section 1170.95 did not apply to voluntary manslaughter convictions.

The trial court was wrong.  Since January 2022, individuals who have been convicted of manslaughter may petition the court for relief under section 1172.6, in Senate Bill No. 775 (2021–2022 Reg. Sess.) (Sen. Bill 775).

---

[1] Further undesignated statutory references are to the Penal Code.

[2] The Legislature has since renumbered Penal Code section 1170.95 as section 1172.6 without substantive change, effective June 30, 2022.  (Stats. 2022, ch. 58, § 10; *People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2 (*Strong*).)

1

Payton's plea to manslaughter is no longer a barrier to relief under section 1172.6, and so the trial court erred in summarily denying Payton's petition without appointing counsel. However, as we explain, this error was harmless. The record establishes Payton is ineligible for section 1172.6 relief as a matter of law. (*People v. Lewis* (2021) 11 Cal.5th 952. 974 (*Lewis*).) We therefore affirm the order denying Payton's petition for resentencing.

BACKGROUND

## A. *Underlying Incident*[3]

Around 9:45 p.m. on October 24, 2015, Eureka Police Detective John Gordon received a call about a shooting on F Street in Eureka. On his way to the location, he was advised that the gunshot victim had been taken to the hospital. Detective Gordon also learned that a possible second shooting victim was at the hospital.

When Detective Gordon arrived, emergency room staff were working to save Elliot Walin's life. Walin later died from his injuries, which were caused by a bullet to his back that went through his chest.

While at the hospital, Detective Gordon spoke with Nicholas Deremer, who was being treated for a gunshot wound to the back of his shoulder. Deremer said that he and a friend walked into an argument during which someone pulled out a gun and began shooting. Deremer was otherwise uncooperative and refused to provide further details.

---

[3] We take our facts from the testimony given at Payton's preliminary hearing. Since we are evaluating the record to determine whether the trial court's error to deny a resentencing hearing was harmless, we examine the record evidence as the trial court would during a resentencing hearing under section 1172.6. We consider only the witness testimony "that is admissible under current law," disregarding any testimony that was admitted at the preliminary hearing under Proposition 115, codified as subdivision (b) of section 872. (§ 1172.6, subd. (d)(3).)

2

Detective Gordon went to the scene of the shooting, where responding officers had encountered a witness who said they knew who might have been involved in the altercation. The witness directed officers to the alleyway apartment of Brittany Thompson. Officers searched Thompson's apartment pursuant to a search warrant and found indicia of marijuana sales. Detective Gordon participated in the search. There was no evidence of the shooting, "no guns, no ammunition, no spent casings or bullet holes in the wall[.]"

Outside of Thompson's apartment, officers saw a bullet hole in a fence near the entrance to the apartment; the "bullet went through the fence into . . . the apartment building on the other side" of the alley. The next day, officers discovered several more bullet holes. In total, officers accounted for seven rounds; no casings were found.

About a week later, on November 2, 2015, Payton was arrested at a motel on an outstanding warrant unrelated to the shooting of Walin and Deremer. Detective Gordon found a revolver in Payton's motel room. The revolver had a laser sight on it and could hold seven rounds in the chamber, "which [was] fairly rare."

After waiving his *Miranda* rights, Payton spoke with Detective Gordon at the police station regarding the shooting. Payton was asleep in a bedroom in Thompson's apartment when Doug Camilli, who was known to both Payton and Thompson, stopped by for a visit. Camilli wanted to talk to Payton about a marijuana debt Payton owed him. Payton got out of bed and joined Thompson and Camilli, who were in the living room. Walin and Deremer were also there; Payton knew Deremer.

Payton said he believed the men were there to rob him. As the men discussed Payton's debt, either Walin or Deremer told Camilli they noticed marijuana in the living room and suggested they take it. Payton was

3

nervous; he had a concealed handgun at his side. As Camilli, Walin, and Deremer were leaving the apartment, Deremer grabbed the marijuana. The men did not brandish weapons or otherwise physically threaten Payton.

Payton pointed his gun at the men and activated the laser sight trying to intimidate them into relinquishing the marijuana. At this point, Thompson screamed, " 'Don't let them go. Don't let them do this. Shoot 'em. Shoot 'em. Shoot 'em.' " Payton followed Walin, Deremer, and Camilli into the alley and shot at them as they fled. He fired all seven rounds. Payton told Detective Gordon that Payton shot in the men's direction just to scare them.

Detective Gordon spoke with Thompson on several occasions. Thompson initially denied being in the apartment during the shooting. She later told police she was in her apartment with Payton when Camilli showed up with Walin and Deremer trying to collect a marijuana debt. On one occasion, Thompson told Detective Gordon she saw Camilli with a firearm. Thompson said the men ransacked the apartment, threw her on a bed, and threatened to rape her. Detective Gordon later asked Payton, " 'Was anything happening to [Thompson] in the back room with these other men,' " and Payton said, "[H]e didn't' know. He didn't care. [And] [h]e used some expletives to describe [Thompson] at that time." Payton said Thompson tried to buy heroin from Camilli while the men were in the apartment.

Detective Gordon also spoke with Camilli, who confirmed he went to Thompson's apartment with Walin and Deremer to collect a debt from Payton. Deremer took a box of marijuana from Payton. Camilli said he was outside walking away when the shots rang out.

B. *Charges and Plea Agreement*

In November 2015, the Humboldt County District Attorney filed a four-count criminal complaint charging Payton with the murder of Elliot Michael

4

Walin (§ 187, subd. (a); count 1); assault with a firearm against Nickolas Edmund Deremer (§ 245, subd. (a)(2); count 2); discharging a firearm in a grossly negligent manner (§ 246.3, subd. (a); count 3); and maintaining a place for selling or using a controlled substance (Health & Saf. Code, § 11366; count 4). The complaint alleged Payton personally and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subdivision (d)) in the commission of the murder in count 1, personally inflicted great bodily injury (§ 12022.7, subdivision (a)) during the commission of the assault with a firearm in count 2, and was armed with a firearm (§ 12022, subdivision (a)(1)) during the commission of the drug offense in count 4. In May 2016, following a preliminary hearing where the court held Payton to answer on all charges in the complaint, the prosecution filed an information adding an alternative count of voluntary manslaughter with respect to Walin (§ 192, subd. (a); count 5).

On June 7, 2016, the parties reached a negotiated disposition under which Payton entered a guilty plea to voluntary manslaughter (count 5) and assault with a firearm (count 2). On the plea form, Payton checked the box that the court could consider the preliminary hearing transcript as proof of the factual basis for his plea. At the plea hearing, counsel stipulated that the preliminary hearing transcript provided a factual basis for Payton's plea.

At the sentencing hearing, the trial court asked the prosecutor about the underlying reasoning for the plea. "Obviously, it was a compromise, and the settlement, along the lines of voluntary manslaughter in the stipulation to the 11 year sentence was a compromise . . . . [I]t's one of those situations where, because of the underlying facts of the case, the way the proceedings were, the place where it took place, we felt that this was . . . a fair resolution, if not a resolution that makes everybody happy, but a fair resolution because

5

of these factors. [¶] The defendant, Derek Payton was in his apartment when he was visited by three other gentlemen, and one—two of those gentlemen ended up being shot later that same evening. [¶] There was a despite [*sic*] about some money that Derek Payton owed to one of these men. It was because of . . . drug transactions. There were some drugs or marijuana, specifically, that he was supposed to sell, and didn't pay the other person. [¶] On the way out of the apartment, one of those gentlemen grabbed some marijuana that was there in the apartment, and then those—as those men were leaving, apparently what happened was Derek Payton got a gun and pointed it, and they started to run. The three men ran. He started shooting them—shooting at them from the porch of the apartment; followed them out to an alleyway and continued shooting. So we saw issues arising at trial, there would have been kind of a quasi self-defense, but . . . we thought . . . looking at all of the factors and all of the facts involved, it looked like a—not necessarily a legal self-defense, but could have been seen as . . . a sudden quarrel, sudden kind of an imperfect self-defense. So that's why we resolved it for a voluntary manslaughter."

The trial court imposed the agreed-to term of 11 years in prison. On the prosecutor's motion, the court dismissed the remainder of the information.

## C. *Petition for Resentencing*

On June 29, 2022, Payton, representing himself, filed a form petition for resentencing under section 1170.95, alleging: "1. A complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or

6

attempted murder under the natural and probable consequences doctrine. (Pen. Code, § 1170.95, subd. (a)(1).) [¶] 2. I was convicted of **murder**, **attempted murder**, or **manslaughter** following a trial or I accepted a plea offer in lieu of a trial at which I could have been convicted of murder or attempted murder. (Pen. Code, § 1170.95, subd. (a)(2).) [¶] 3. I could not presently be convicted of murder or attempted murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019. (Pen. Code, § 1170.95, subd. (a)(3).)" Payton also requested appointment of counsel.

On July 8, 2022, without appointing counsel for Payton, the trial court denied the petition in a written order on the sole ground that Payton was convicted of voluntary manslaughter, not murder. The order simply stated, "Penal Code § 1170.95 does not apply to a voluntary manslaughter conviction (*People v. Cervantes* (2020) 44 Cal.App.5th 884, 887)."

## DISCUSSION

Payton contends the order denying his petition for resentencing must be reversed because the trial court erred in summarily denying his petition because he was entitled to appointed counsel. The Attorney General contends that any error was harmless because Payton, as a direct perpetrator, is ineligible for section 1172.6 relief as a matter of law.

### A. *Legislative Changes Relating to the Natural and Probable Consequence Doctrine*

At all relevant times, section 187 has defined murder as an unlawful killing with "malice aforethought." (§ 187, subd. (a).) Section 188 has provided that malice "may be express or implied" (former § 188, as amended by Stats. 1982, ch. 893, § 4, subd. (a)(2)).

In 2018, the Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Sen. Bill 1437), which amended sections 188 and 189 to limit the scope of the felony-murder rule and to eliminate liability under the "natural and

7

probable consequence" doctrine for second degree murder. (*Lewis*, *supra*, 11 Cal.5th at p. 957; *People v. Gentile* (2020) 10 Cal.5th 830, 839.) Senate Bill 1437 added subdivision (a)(3) to section 188, which now states in pertinent part, "Malice shall not be imputed to a person based solely on his or her participation in a crime." Senate Bill 1437 "also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended. [Citations.] Under newly enacted section 1172.6, the process begins with the filing of a petition containing a declaration that all requirements for eligibility are met." (*Strong*, *supra*, 13 Cal.5th at p. 708.) The new statute provides that a "person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter" may file a petition to have that "conviction vacated and to be resentenced on any remaining counts when . . . the following [three] conditions apply." First, "A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine"; second, "The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder"; and, third, "The petitioner could not presently be convicted of murder or attempted murder because of changes

8

to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(1)–(3).)

"When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' (§ 1172.6, subd. (c) . . . ].)" (*Strong*, *supra*, 13 Cal.5th at p. 708.) "[T]he statutory language and legislative intent of section [1172.6] make clear that petitioners are entitled to the appointment of counsel upon the filing of a facially sufficient petition (see § [1172.6], subds. (b), (c)) and that only *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' [Citation.]" (*Lewis*, *supra*, 11 Cal.5th at p. 957.)[4] The failure to appoint counsel is, however, harmless error if there is no reasonable probability the petitioner would have obtained a more favorable result had counsel been appointed. (*Id.* at p. 974.)

**B.** *Summarily Denying the Petition Was Harmless Error*

Since January 1, 2022, manslaughter convictions are no longer a barrier to relief under section 1172.6. (See Sen. Bill 775; Stats. 2021, ch. 551.) Without question, the trial court's July 8, 2022 order summarily denying Payton's petition, without first appointing counsel—solely based on Payton's voluntary manslaughter conviction—was erroneous. The error, however, was harmless.

---

[4] The Legislature has declared that recent amendments to section 1172.6 "[c]odif[y] the holdings of . . . *Lewis*[, *supra*, 11 Cal.5th [at pages] 961–970, regarding petitioners' right to counsel and the standard for determining the existence of a prima facie case." (Stats. 2021, ch. 551, § 1, subd. (b).)

9

To demonstrate prejudice from the denial of a section 1172.6 petition before the issuance of an order to show cause, which was the error in this case, the petitioner must show it is reasonably probable that, absent statutory errors, his petition would not have been summarily denied without an evidentiary hearing. (*Lewis*, *supra*, 11 Cal.5th at pp. 972–974; *People v. Watson* (1956) 46 Cal.2d 818, 836.) Here, Payton was not prejudiced by the mistake in the trial court's procedure. Payton was the sole and actual perpetrator in the shooting death of Walin. That means Payton was and is ineligible for resentencing as a matter of law. (*People v. Garcia* (2022) 82 Cal.App.5th 956, 969–971 [affirming denial of resentencing because record of conviction "unequivocally establishes" defendant was the sole perpetrator and actual killer]; *People v. Harden* (2022) 81 Cal.App.5th 45, 47–48, 56 [same]; *People v. Myles* (2021) 69 Cal.App.5th 688, 692–694 [affirming denial of resentencing because defendant admitted at parole suitability hearing that she was actual killer; defendant therefore was " 'directly liable,' " " 'not vicariously liable' "]; *People v. Gallo* (2020) 57 Cal.App.5th 594, 599–600 [defendant was actual killer]; *People v. Edwards* (2020) 48 Cal.App.5th 666, 669, 671, 674 [affirming summary denial of resentencing petition where record of conviction showed petitioner was actual killer]; see also *People v. Delgadillo* (2022) 14 Cal.5th 216, 233 [defendant "not entitled to any relief under section 1172.6" because he "was the actual killer and the only participant in the killing"]; *People v. Daniel* (2020) 57 Cal.App.5th 666, 678 [failure to appoint counsel was harmless because defendant was actual killer who was "directly, not vicariously, liable for [victim's] murder"].)

While a harmless error analysis is not appropriate in section 1172.6 cases that concern convictions for felony murder based on findings of special circumstances, as recently explained in *People v. Arreguin* (Mar. 9, 2023,

10

B304838) 2023 WL 2422082, ours is not such a case. In *Arreguin*, a jury had convicted the defendant under a felony-murder theory with a finding of special circumstances because the murder occurred during a robbery with a principal carrying a firearm. The defendant had argued he "was merely a passenger in the getaway vehicle who was unaware that the other men were planning a robbery or possessed a firearm," and denied exhorting the principal to " '[s]hoot 'im, shoot 'im' " immediately before the "fatal shot." (*Id.* at pp. *1–*2.) Under these circumstances, the court remanded the case for an evidentiary hearing. (*Id.* at p. *1.) Applying the holding in *Strong*, "that a pre-*Banks* and pre-*Clark* special circumstance[5] finding does not warrant summary denial of a section 1172.6 petition," the court in *Arreguin* found that *Strong* did not "appear to permit a harmless error application." (*Arreguin*, at p. *1.)

Unlike the defendant in *Arreguin*, Payton was the actual principal in Walin's murder. Arreguin's role in the shooting in his case was more similar to Thompson's role in this case, screaming "Don't let them go. Don't let them do this. Shoot 'em. Shoot 'em. Shoot 'em," while Payton held and then fired the gun. Payton's case also did not involve findings of special circumstances. The *Strong* decision does not bar a harmless error analysis under the facts of this case.

Payton admits that the preliminary hearing transcript demonstrates that he "was prosecuted for murder on the theory that he was the actual killer." Payton attempts to argue that the preliminary hearing testimony merely provided a factual basis for his plea and that he did not admit the

---

[5] *Banks* had been decided in 2015, and *Clark* in 2016, clarifying the law concerning implied intent in the context of felony murder that ultimately led to the Legislature's adoption of what is now section 1172.6. (*People v. Clark* (2016) 63 Cal.4th 522; *People v. Banks* (2015) 61 Cal.4th 788.)

11

truth of any evidence presented at the hearing.  He relies on cases that have held that stipulations to a factual basis for a plea do not preclude resentencing relief as a matter of law.  (*People v. Rivera* (2021) 62 Cal.App.5th 217, 238, 276; accord, *People v. Flores* (2022) 76 Cal.App.5th 974, 987.)

Unlike the cases relied on by Payton, however, the record here unequivocally establishes Payton was the sole perpetrator and actual killer. (Cf. *People v. Rivera*, *supra*, 62 Cal.App.5th at pp. 232, 236 [prosecution proceeded on a single theory of liability that Rivera possessed malice aforethought jointly with a fellow gang member involved in the shooting]; *People v. Flores*, *supra*, 76 Cal.App.5th at pp. 978, 981 [codefendants charged with murder].)  "[N]o factfinding, weighing of evidence, or credibility determinations" were or are necessary here, as Payton was the sole, actual killer who was directly—not vicariously—liable for Walin's death.  (*People v. Harden*, *supra*, 81 Cal.App.5th at p. 59.)

Payton's situation is entirely different from the cases the Legislature made eligible for resentencing under section 1172.6, as in cases where a defendant faced a charge of felony murder after serving as a getaway driver and so agreed to a plea to a manslaughter charge instead.  Acting alone, Payton fired numerous shots at three men fleeing from the apartment, killing one and wounding another.  While Senate Bill 775 added pleas to manslaughter and attempted murder to charges that may be eligible for resentencing, it did not change the state of the law regarding murder convictions any further than Senate Bill 1437 did.  Payton was facing a murder charge based on his own conduct, but ultimately pled to voluntary manslaughter.

12

For the first time in his reply brief, Payton suggests a hearing is necessary because he "might be able to adduce testimony that Brittney Thompson actually was the one who fired the bullet that killed Walin." Payton never offered any theory to support his implicit contention that he was an accomplice and not the person who actually shot Walin. He further speculates that "[f]or the trial court to have rejected such a possibility at the prima facie review stage based upon its determination from the preliminary hearing testimony would have been to engage in prohibited factfinding . . . ."

This argument lacks merit. Nowhere in Payton's petition did he assert he was not the sole and actual perpetrator. Nor is there any indication of facts that might support such a defense in the record of Payton's preliminary hearing. Additionally, "arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party." (*People v. Tully* (2012) 54 Cal.4th 952, 1075; see *People v. Taylor* (2020) 43 Cal.App.5th 1102, 1114 [arguments raised for the first time in a reply brief are forfeited].) Finally, the trial court did not engage in any improper fact finding by failing to consider that Thompson may have been the one to pull the trigger. Thompson was neither charged nor otherwise implicated in Walin's death. The trial court was not required to hold an evidentiary hearing based purely on Payton's after-the-fact speculation, unsupported by any evidence in the record of the preliminary hearing or elsewhere.

Had the People proceeded to trial, Payton could not have been convicted of murder or attempted murder under a vicarious or imputed liability theory for two simple reasons: (1) he was the *only* perpetrator; and (2) he was not engaged in a felony at the time he shot Walin. Payton is statutorily ineligible for resentencing. Payton was not prejudiced by the trial

13

court's summary denial of his petition. (*Lewis*, *supra*, 11 Cal.5th at pp. 972–974.)

## DISPOSITION

We affirm the order denying Payton's petition for resentencing.

_____

Markman, J.*

We concur:

_____

Stewart, P.J.


_____

Richman, J.


*People v. Payton* (A165686)


     * Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.